**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**ARETHA TOWNSEND,**

               **Plaintiff,**

    **v.**                                         **1:15-cv-2835-WSD**

**STAPLES, INC.,**

               **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Objections [7] to Magistrate Judge Catherine M. Salinas' Final Report and Recommendation [5] ("R&R"), recommending that Plaintiff Aretha Townsend's ("Plaintiff") Complaint [4] be dismissed without prejudice.  Also before the Court is Plaintiff's Motion to Extend Time to File Plaintiff's Evidence of Fact and Initial Disclosures [8] ("Motion for Extension").

**I.  BACKGROUND**

    A.  <u>Facts</u>

On April 28, 2008, Plaintiff began working as a warehouse associate at Staples, Inc. ("Defendant").  (Compl. ¶ 10).  On or about March 26, 2013, Plaintiff filed a complaint with Defendant's Human Resources Department concerning theft

and unspecified "unethical practices."  (Id. ¶ 11).  "Shortly thereafter," Plaintiff claims her supervisor retaliated against her by issuing "wrongful write ups" and by failing to notify her of early shifts, presumably a result of the complaint she filed with the Human Resources Department.  (Id. ¶ 11).  This retaliation, she claims, caused her stress and muscle spasms, which led to an on-the-job injury while lifting a product on December 20, 2013.  (Id. ¶¶ 11-12).  Plaintiff was rushed to the hospital, where she received medical treatment for severe chest pains.  (Id. ¶ 12).  It appears that Plaintiff then began a period of medical leave from work.

On December 21, 2013, Plaintiff was seen by an in-network doctor,[1] who "induced [her] with 16 types of medication," "performed an unnecessary procedure-cardiac catheterization," concluded that her heart was in good condition, and prescribed her medication intended for heart disease patients.  (Id. ¶¶ 13-14, 18, 21).  Plaintiff alleges that, as a result of this treatment and medication, her health deteriorated and she became "afraid for [her] life."  (Id. ¶¶ 15, 24). According to Plaintiff, her doctor "used his profession as an assault weapon" and intended to "destroy [her] organs, particularly [her] heart."  (Id. ¶ 18).

---

[1]     It is not clear what Plaintiff means by "in-network" doctor.  It is unclear whether the doctor was within a network under a group medical plan, or whether the doctor had some other "in-network" status.

On January 10, 2014, Plaintiff's doctor allegedly untruthfully told her that she had heart disease.  (Id. ¶ 16; see id. ¶¶ 18-21, 28).  On February 14, 2014, Plaintiff's health insurance coverage was suspended because her health insurance company ("Cigna") did not have her telephone number on file.  (Id. ¶ 16).  Cigna told Plaintiff that her health insurance coverage would resume once her in-network doctor completed a "medical certification."  (Id. ¶ 16).  Plaintiff alleges that her in-network doctor refused to complete the certification.  (Id. ¶ 17).

On April 14, 2014, Plaintiff went to the Piedmont Hospital Emergency Room, complaining of "severe stressed back pain," bloating, irregular bowel movements, and kidney problems.  (Id. ¶ 18).  The hospital told Plaintiff she had high blood pressure, and prescribed a higher dosage of heart disease medication based on "fraudulent medical records" generated by her in-network doctor.  (Id.).

On April 14, 2014, Defendant sent Plaintiff a letter stating that neither Cigna nor Defendant had information indicating that Plaintiff required additional time off from work.  (Id. ¶ 30).  On April 17, 2014, Plaintiff sent a letter to Defendant's Human Resources Department, alleging misconduct on the part of her in-network doctor and requesting extended leave for a medical re-evaluation.  (Id. ¶ 17, 32).

On or about May 6, 2014, Defendant sent a letter to Plaintiff, requesting her to submit her re-evaluation results within five (5) to eight (8) days.  (Id. ¶¶ 32-33,

3

36-37).  Defendant enclosed a medical questionnaire for the re-evaluating doctor to complete.  (Id. ¶ 37).  Plaintiff alleges that she could not complete her medical re-evaluation within five (5) to eight (8) days because her "injury and aggravated injury was internal; and complete and thorough evaluations had to be conducted." (Id. ¶ 36).  Plaintiff also contends that the enclosed questionnaire was incomplete and inadequate.  (Id. ¶ 37).

On May 20, 2014, the day Plaintiff began her medical re-evaluation, Defendant terminated Plaintiff's employment.  (Id. ¶¶ 10, 33, 38).  Plaintiff alleges that she was terminated for being late to work and because of her "most recent infraction; which was medical re-evaluation."  (Id. ¶¶ 38, 40).  On or about September 29, 2014, Plaintiff filed, with the Equal Employment Opportunity Commission ("EEOC"), a discrimination charge against Defendant.  (Id. ¶ 8).  On May 12, 2015, the EEOC dismissed the charge.  (Id.).

Plaintiff alleges that she is "the victim of a conspiracy," that Defendant and her in-network doctor "coerced and conspired acts of fraud, material misrepresentation, assault from a third party entity via induced medication and prescribed medication without probable cause."  (Id. ¶¶ 18, 24).  She asserts that Defendant "used [her] in network hospital and doctor(s) to retaliate against [her], to avoid paying workers compensation claims and other claims of wrongdoing

which [she] had against them concerning prior grievances." (Id. ¶ 25).  She further asserts that her doctor "was a hired doctor, assigned to cripple [her] health by attempting to make it appear as if [she] had a pre-existing heart condition or some sort of main artery/or organ disorder which caused [her] initial injury; all in an effort to protect the interests of [Cigna] and [Defendant], and whatever special interests groups." (Id. ¶ 28).

B.   Procedural History

On August 11, 2015, Plaintiff, proceeding *pro se*, filed her Application for Leave to Proceed *In Forma Pauperis* ("IFP Application") [1].  Also on August 11, 2015, Plaintiff presented to the Court her Complaint alleging that Defendant violated Section 503 of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12203, by terminating her in retaliation for "exercising rights and privileges protected by the ADA." (Compl. ¶ 42).[2]  On October 9, 2015, the Magistrate Judge granted Plaintiff's IFP Application and, after conducting a frivolity review, recommended that Plaintiff's Complaint be dismissed.[3]

---

[2]   Plaintiff's Complaint was received in the Clerk of Court's office on August 11, 2015, but not filed until the Magistrate Judge issued her R&R following her frivolity review.

[3]   The Magistrate Judge conducted her frivolity review on docket entry [1.1], which is the same document that Plaintiff filed, at docket entry [4], as her Complaint.

The Magistrate Judge found that Plaintiff does not state a retaliation claim under the ADA because Plaintiff's employment was terminated before, not after, she filed her discrimination charge with the EEOC.  Plaintiff thus cannot show that Defendant terminated her in retaliation for filing an EEOC charge.  (R&R at 7-8). The Magistrate Judge further found that Plaintiff does not assert a plausible discrimination claim under the ADA because she fails to allege a disability or show that she can do her job with or without reasonable accommodation.  (Id. at 6-7). The Magistrate Judge concluded that Plaintiff also fails to state a claim under Title II of the Genetic Information Nondiscrimination Act of 2008 ("GINA"), 42 U.S.C. § 2000ff, et seq., to which Plaintiff makes "passing references" in her Complaint.  (Id. at 9).  The R&R concludes that Plaintiff's Complaint fails to state a claim and is frivolous because her "realistic chances of ultimate success are slight."  (R&R at 8).

On October 22, 2015, Plaintiff filed her Objections to the R&R, asserting that the R&R "is erroneous because the claim charge was stated in accordance to ADA."  ([7] at 2).  Plaintiff asserts that her supervisor retaliated against her by generating "wrongful write-ups," failing to protect Defendant from theft, failing to report theft to an insurance company, and failing to notify Plaintiff of early shifts. (Id.).  Plaintiff further asserts that, on December 20, 2013, this retaliation caused

6

her stress-induced cardiomyopathy when she lifted a product at work.  (Id.).

On October 22, 2015, Plaintiff filed her Motion for Extension, which summarily seeks an extension of time "to file Plaintiff's evidence of fact and initial disclosures."  ([8] at 1).

## II.   DISCUSSION

### A.   Legal Standard

#### 1.   Frivolity Review

A court must dismiss a complaint filed *in forma pauperis* if at any time the court determines that the action is frivolous or malicious or that it fails to state a claim on which relief can be granted.  28 U.S.C. § 1915(e)(2)(B)(i)-(ii).  "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."  Wilkerson v. H&S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).  Under this standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."
Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

Review for frivolousness, on the other hand, "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."
See Miller v. Donald, 541 F.3d 1091, 1100 (11th Cir. 2008) (quoting
Neitzke v. Williams, 490 U.S. 319, 327 (1989)).  A claim is frivolous when it "has little or no chance of success," that is, when it appears "from the face of the complaint that the factual allegations are 'clearly baseless' or that the legal theories are 'indisputably meritless.'"  Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993) (quoting Neitzke, 490 U.S. at 327).  "[I]f the district court sees that an affirmative defense would defeat the action, a [dismissal on the grounds of frivolity] is allowed."  Clark v. State of Ga. Pardons & Paroles Bd., 915 F.2d 636, 640 (11th Cir. 1990).

Plaintiff filed her Complaint *pro se*.  "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."
Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations and internal quotation marks

8

omitted).  Nevertheless, a *pro se* plaintiff must comply with the threshold requirements of the Federal Rules of Civil Procedure.  See Beckwith v. Bellsouth Telecomms. Inc., 146 F. App'x 368, 371 (11th Cir. 2005).  "Even though a *pro se* complaint should be construed liberally, a *pro se* complaint still must state a claim upon which the Court can grant relief."  Grigsby v. Thomas, 506 F. Supp. 2d 26, 28 (D.D.C. 2007).  "[A] district court does not have license to rewrite a deficient pleading."  Osahar v. U.S. Postal Serv., 297 F. App'x 863, 864 (11th Cir. 2008).

## 2.    Review of a Report and Recommendation

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983).  A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  With respect to those findings and recommendations to which objections have not been asserted, the Court must conduct a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983), cert. denied, 464 U.S. 1050 (1984).

Plaintiff's objections repeat allegations from her Complaint and assert that

the R&R is "erroneous because the claim charge was stated in accordance to

ADA." ([7] at 2).  Plaintiff's other objections are patently meritless.[4]  The Court

reviews the R&R for plain error because Plaintiff's objections are "[f]rivolous,

conclusive, or general" and do not "specifically identify those findings objected

to."  Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988).

    B.    <u>Analysis</u>

        1.    <u>Plaintiff's ADA Retaliation Claim</u>

The ADA provides that "[n]o person shall discriminate against any

individual because such individual has opposed any act or practice made unlawful

by [the ADA] or because such individual made a charge . . . under [the ADA]."  42

U.S.C. § 12203(a).  To state a claim under this provision, Plaintiff must show that

(1) she "engaged in conduct protected by the ADA"; (2) she "was subjected to an

---

[4]    Plaintiff asserts three (3) other objections.  First, she contends that the Magistrate Judge contradicted herself by dismissing Plaintiff's Complaint and accepting Plaintiff's allegations as true.  ([7] at 1-2).  There is no contradiction: the Magistrate Judge concluded that, even accepting Plaintiff's allegations as true, they fail to state a claim.  Second, Plaintiff asserts that the Magistrate Judge "failed to correctly quote certain issues of Plaintiff's complaint" and failed to allow Plaintiff to submit evidence in support of her allegations.  (Id.).  Plaintiff does not identify, and the Court cannot find, any material, incorrect quotes in the R&R.  Plaintiff also is not permitted, at this early stage in the case, to introduce evidence.  Finally, Plaintiff asserts that the Magistrate Judge was not permitted to grant Plaintiff's IFP Application "solely for purposes of dismissal."  (Id. at 3).  Plaintiff is mistaken.

adverse employment action at the time, or after the protected conduct took place";
and (3) Defendant took the adverse employment action against Plaintiff "because
of" her protected conduct.  Collado v. United Parcel Serv., Co., 419 F.3d 1143,
1158 (11th Cir. 2005) (quoting 3C Fed. Jury Prac. & Instr. § 172.24 (5th ed.)
(internal quotation marks omitted)).

Plaintiff alleges that she was terminated on May 20, 2014, before she filed,
on or about September 29, 2014, her discrimination charge with the EEOC.  The
Magistrate Judge found that, because Plaintiff was terminated before she filed her
EEOC charge, she could not have been fired in retaliation for filing her
discrimination claim.  The Court finds no plain error in this finding.  See Brungart
v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000) ("A decision
maker cannot have been motivated to retaliate by something unknown to him.");
King v. Kennesaw State Univ., No. 1:05-cv-3169, 2007 WL 2713252, at *17 (N.D.
Ga. Sept. 13, 2007) ("[I]t is undisputed that Plaintiff filed her complaint with the
GCEO and EEOC in April 2005, *after* Defendant [took an adverse employment
action against Plaintiff].  Accordingly, Plaintiff's April 2005 complaint cannot be
the cause of the [adverse employment action].").

Plaintiff alleges that her supervisor retaliated against her for filing a
complaint, with Defendant's Human Resources Department, concerning theft and

11

unspecified "unethical practices."  (Compl. ¶ 11; [7] at 2).  Plaintiff does not allege that these complaints "oppos[ed] any act or practice made unlawful by [the ADA]."  The Court finds no plain error in the Magistrate Judge's determination that Plaintiff fails to state a plausible retaliation claim under the ADA.  42 U.S.C. § 12203(a).[5]

### 2.   Plaintiff's ADA Discrimination Claim

Although Plaintiff's Complaint asserts only an ADA retaliation claim, Plaintiff also references the ADA's discrimination provision.  (See Compl. ¶¶ 1, 41-44).  Construing Plaintiff's *pro se* complaint liberally, the Court assumes Plaintiff asserts a discrimination claim under the ADA.

The ADA provides that no covered employer shall discriminate against "a qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  To state a claim under this provision, Plaintiff must plead that: (1) she has a disability, (2) she was a "qualified individual," meaning she could perform the essential functions of her job with or without reasonable accommodations, and (3) she was subjected to

---

[5]     Plaintiff alleges that Defendant terminated her in retaliation for pursuing a medical re-evaluation.  (See Compl. ¶¶ 38, 40).  She further alleges that Defendant "used [her] in network hospital and doctor(s) to retaliate against [her], to avoid paying workers compensation claims and other claims of wrongdoing which [she] had against them concerning prior grievances."  (Id. ¶ 25).  Plaintiff does not show that these actions, which allegedly triggered retaliation, involved "oppos[ing] any act or practice made unlawful by [the ADA]."  42 U.S.C. § 12203(a).

unlawful discrimination because of her disability.  Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1255-56 (11th Cir. 2007); Cramer v. State of Fla., 117 F.3d 1258, 1264 (11th Cir. 1997); see 42 U.S.C. § 12111(8).  The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ;  (B) "a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).  "[T]emporary, non-chronic impairments of short duration do not constitute disabilities."  Leone v. All. Foods, Inc., No. 8:14-cv-800, 2015 WL 4879406, at *7 (M.D. Fla. Aug. 14, 2015).

The Magistrate Judge found that, although Plaintiff alleges several health problems, she does not allege a specific disability, defined by the ADA.  The Magistrate Judge also found that Plaintiff does not allege that she could do her job with or without reasonable accommodation.  The Court finds no plain error in these findings, or in the finding that Plaintiff fails to state a plausible discrimination claim under the ADA.

### 3.    Plaintiff's GINA Claim

Construing her *pro se* complaint liberally, the Court assumes Plaintiff asserts a claim under GINA.  (See Compl. ¶¶ 1-2, 40).  GINA prohibits employers from "discharg[ing] . . . any employee, or otherwise to discriminate against any employee . . . because of genetic information with respect to the employee."

13

42 U.S.C. § 2000ff-1(a)(1).  The Act also makes it unlawful, subject to certain exceptions, "for an employer to request, require, or purchase genetic information with respect to an employee or a family member of the employee."  Id. § 2000ff-1(b).

There is a statutory distinction between "medical information" and "genetic information."  Ortiz v. City of San Antonio Fire Dep't, 806 F.3d 822, 826 (5th Cir. 2015).  GINA defines genetic information as "information about (i) [an] individual's genetic tests, (ii) the genetic tests of family members of such individual, and (iii) the manifestation of a disease or disorder in family members of such individual."  42 U.S.C. § 2000ff(4)(A).  A "genetic test" is "an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes."  Id. § 2000ff(7)(A).  It is not "an analysis of proteins or metabolites that does not detect genotypes, mutations, or chromosomal changes."  Id. § 2000ff(7)(B).  The term "genetic test" does not include many medical tests, including those for blood count, cholesterol, or liver function.  See 29 C.F.R. § 1635.3(f)(3).

The Magistrate Judge concluded that Plaintiff fails to adequately state a GINA claim, and the Court finds no plain error in this determination.  The Court also finds no plain error in the Magistrate Judge's determination that Plaintiff's

Complaint is frivolous because "Plaintiff's realistic chances of ultimate success are slight." (R&R at 8); see Clark v. State of Ga. Pardons and Paroles Bd., 915 F.2d 636, 639 (11th Cir. 1990) (stating that a complaint is frivolous "if the 'plaintiff's realistic chances of ultimate success are slight.'" (quoting Moreland v. Wharton, 899 F.2d 1168, 1170 (11th Cir. 1990))).[6]

## III.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Aretha Townsend's Objections [7] to the Final Report and Recommendation are **OVERRULED**.

**IT IS FURTHER ORDERED** that Magistrate Judge Catherine M. Salinas' Final Report and Recommendation [5] is **ADOPTED** and this action is **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff Aretha Townsend's Motion to Extend Time to File Plaintiff's Evidence of Fact and Initial Disclosures [8] is **DENIED AS MOOT**.

---

[6]    The Court would reach the same conclusions expressed in this Order even if Plaintiff had filed proper objections and the Court conducted a de novo review. Plaintiff simply has not stated cognizable claims in her Complaint.

**SO ORDERED** this 15th day of June, 2016.

_____

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE